MISSOURI, K. & T. RY. CO. OF TEXAS v. ATTAWAY. (No. 7436.)

(Court of Civil Appeals of Texas. Dallas. Nov. 27, 1915. Rehearing Denied Dec. 24, 1915.)

1. APPEAL AND ERROR ☞1011—SCOPE OF REVIEW—FINDINGS OF FACT.

The court on appeal is bound by the findings of the trial court upon questions of fact upon which the evidence is in conflict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3989; Dec. Dig. ☞1011.]

2. RAILROADS ☞405—OPERATION—INJURIES TO STOCK—LIABILITY.

Rev. St. 1911, art. 6603, making railway companies liable for all stock killed by being struck by rolling stock of the company, does not limit liability of the company to injuries so caused, but the company is liable for injuries to stock due to any other form of negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1393–1398; Dec. Dig. ☞405.]

3. RAILROADS ☞413 — OPERATION — CATTLE GUARDS—INJURIES TO STOCK—"INCLOSURE."

Under Rev. St. 1911, art. 6596, requiring railroads to construct and maintain good and sufficient cattle guards at the point of entering every field or inclosure, and article 6600, making the companies liable to the person damaged for injuries due to failure to observe article 6596, it was defendant's duty to maintain cattle guards at a lane between two parts of plaintiff's

land, which were separated by the right of way, a lane being an "inclosure" within the statute, which contemplates private inclosures, so that when defendant permitted sand to accumulate in the guards and conceal their points, so that plaintiff's horses injured their hoofs in crossing over the guards, defendant was liable for the injuries.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1459–1472; Dec. Dig. ⊙⇒413.

For other definitions, see Words and Phrases, First and Second Series, Inclosure.]

4. RAILROADS ⊙⇒421—OPERATION—INJURIES TO STOCK—ACTIONS—DEFENSES—CONTRIBUTORY NEGLIGENCE,

It was not contributory negligence for plaintiff, knowing of the defective condition of cattle guards at a private lane, to turn his stock into the lane, but the railroad, by failing to repair the guards, assumed the risk of injuries due to their defective condition, since it could not, by its negligence, deprive the landowner of the ordinary use of his land.

[Ed. Note.—For other cases, see Railroads, Cent. D· §§ 1501–1508, 1510; Dec. Dig. ⊙⇒ 421.]

Appeal from Wood County Court; R. E. Bozeman, Judge.

Action by H. W. Attaway against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

R. B. Howell, of Winnsboro, for appellant. M. D. Carlock, of Winnsboro, for appellee.

RASBURY, J. Appellee sued appellant in justice court, precint No. 4, Wood county, according to the transcript "account damages to live stock $195.00." The pleading of appellant by the same record was the "general denial." Upon trial before the justice of the peace judgment was for appellee for $150. In the time and manner provided by law appeal was taken to the county court of Wood county, where there was trial de novo before the court upon the same pleading, resulting again in judgment for appellee for $150, from which last judgment appeal has been prosecuted to this court.

The county judge, upon request of appellee, filed conclusions of fact, but inasmuch as appellant challenges the sufficiency of the evidence to sustain the court's conclusions of fact, we will, in our own language, state the substance of the essential facts deducible from the evidence. Appellee lives on his farm, a short distance west of Newcome, a station on appellant's railroad in Wood county. The railroad crosses his farm. His residence is south of the railroad. Opposite his residence and across the railroad is his pasture, which is under fence. The residence is connected with the pasture by a fenced passageway or lane which leads from the farmhouse across the railroad track to the pasture. Where the lane crosses the railroad there are cattle guards on each side. Appellee's father, with the consent of appellant, built the lane, to be used as a private crossing for his stock from his residence into the

pasture. Appellant put in the cattle guards about 10 years prior to the injury. When the guards were put in, nothing was said concerning their upkeep. Stock was turned into the lane at appellee's residence through a gate there, and found their way thence across the railway into the pasture. Prior to instituting this suit appellee turned two mares into the lane, and when they reached the crossing they walked over and across the cattle guards onto the track and into a public road, which crosses the railway track at said point just outside the lane. There is no detailed discription of the guards in the record, but it does appear that the guards are made from a solid sheet of iron, presumably to fit in between the tracks and outside thereof, into which interstices are cut, and the cut part then raised to an upright position, which results in a sharp upright spike about two inches high. When the mares crossed over the guards these spikes entered their feet, injuring them seriously, as a result of which one died and the other was disabled for two weeks. Due to the slope of the land where the guards were built, when rain fell the water would wash sand upon the guards, and at the time the mares were injured the guards, save a few spikes, were covered by such deposit and not visible to the eye. Appellee knew the condition of the guards before his mares were injured, but made no complaint thereof to the company. The evidence supports the amount of the verdict.

[1] The foregoing facts are fairly deducible from the evidence adduced on behalf of appellee, without reference to the court's conclusions of fact, which appellant has assailed. It is also true that appellant introduced a number of witnesses who sharply contradicted appellee and his witness, and whose testimony showed that the water from rains did not wash sand upon the guards, and that at the time the mares were injured there was, as matter of fact, no sand thereon. In reference to such contradiction, however, it was the right and duty of the trial judge to reconcile or solve the conflict. This he has done, and we are bound by his conclusions in that respect. Accordingly we will consider the assignments of error from the standpoint of those facts which will support the judgment of the court.

[2] The first proposition urged under the foregoing facts is, in effect, that a railway company is not liable for injuries sustained by live stock which stray upon its right of way from a private inclosure, except in cases where such stock is struck by the locomotives or cars of the railway company. This proposition is based upon article 6603, R. S. 1911, and its repeated construction by the appellate courts of the state. The effect of the article cited is to declare that railway companies shall be liable for all live stock

killed or injured by coming in contact with the locomotives or cars of such railway companies. We do not understand, however, that the statute quoted excludes liability from any other form of negligence imposed by statute or rule of decision.

[3] Liability against appellant in the instant case is sought to be fixed by the provisions of article 6596, R. S. 1911, which require railway companies to place a good and sufficient cattle guard or stop at the point of entering every field or inclosure, and to keep same in repair, and article 6600, R. S. 1911, which provides that any railway company, neglecting to construct and keep in repair such cattle guards, shall be liable to the party injured by such failure for all damages resulting therefrom. The lane constructed by appellee's father was an inclosure within the meaning of article 6596, R. S. 1911, and not to be confounded with the provisions of article 6486, requiring gates and not cattle guards. S. A. & A. P. Ry. Co. v. Robinson, 17 Tex. Civ. App. 400, 43 S. W. 76. Hence it was the duty of appellant to construct and keep in repair, at the point where its line of railway crossed appellee's lane, a good and sufficient cattle guard or stop, which is by article 6598, R. S. 1911, declared to be in effect one which will turn marauding stock. In such connection it has been held that the statute is intended, not only to prevent stock from depredating on adjacent fields, but to prevent as well their escape. Southwestern Tel. & Tel. Co. v. Krause, 92 S. W. 431. The evidence on the part of appellee, which was adopted by the trial court, discloses that the cattle guards maintained by appellant where its road passed through appellee's inclosure was not in "good repair," since sand had been permitted to wash and accumulate upon the guards so as to conceal the guards, save a few of the spikes, by reason of which appellee's mares were induced to cross over same. A case quite similar in its facts to those in the instant case was before this court. Saine v. M., K. & T. Ry. Co. of Texas, 85 S. W. 487. In that case it appeared that the railway had permitted grass to grow through and around the guard, so as to hide the spikes and induce live stock to go upon the same, whereby they were injured in the same manner as were appellee's mares. In the lower court the railway company's liability was made to turn upon whether the guard at the time of the injury to the stock was in good condition, the court refusing to submit the facts pleaded as a basis of liability. In reversing the case this court said:

"The cattle guard itself may have been in good condition, and defendant in error may have strictly performed its statutory duty in the selection of the guard used, and in the manner of constructing and placing it upon its road-bed, yet guilty of such negligence in respect to permitting grass to grow up through and around said guard, whereby plaintiff in error's horses

180 S.W.—73

were induced to cross over the same, as rendered it liable for the injury thereby inflicted upon them."

In the case from which we have just quoted, the live stock entered over the defective guard from the commons into a private field, while in the instant case they entered from a private inclosure over a defective guard upon the commons. But we fail to see that such fact affects the rule, as is contended by appellant. Every inclosure through which the road passes must be protected by cattle guards, which of course include private inclosures. While the statute may conceivably have contemplated public inclosures, it is beyond question that it did contemplate private inclosures. Such a holding, in effect, under facts nearly identical with those in the instant case, will be found in Stephenville N. & S. T. Ry. Co. v. Schrank, 175 S. W. 471. See, also, T. & P. Ry. Co. v. Sproles, 47 Tex. Civ. App. 294, 105 S. W. 521. There is a broad distinction to be drawn between the case at bar and the many cases which have been passed upon by the appellate courts and cited by appellant, holding, in effect, that a railway company is not liable, under the facts in those cases, for injuries received by live stock while upon its tracks not resulting from contract with its locomotives or cars. Railway companies are not required to so construct their railways as to prevent injury to stock which may stray thereon and negligence vel non is always an issue in such cases, save when it appears that the railway company ran its locomotives or cars upon such live stock; but an entirely different rule pertains when the railway company is by statute, charged with the specific duty of maintaining a defined condition at inclosures, and the failure to maintain such condition is the proximate cause of the injury as in the case at bar. We accordingly feel constrained to overrule appellant's first assignment of error on the ground that evidence sustains the conclusion of the trial judge that the appellant had failed to keep its guards at the point where its tracks crossed appellee's inclosure in repair.

[4] It is next urged that the court erred in rendering judgment for appellee because appellee, knowing of the defective condition of the guard, turned his stock into the inclosure, and thereby contributed to their injury. We conclude that such knowledge by appellee did not constitute contributory negligence on his part. In G., C. & S. F. Ry. Co. v. Cash, 8 Tex. Civ. App. 569, 28 S. W. 387, it is said:

"While the authorities seem somewhat conflicting upon this question, we believe the better reason is with those cases which hold that the owner of land adjacent to a railroad cannot thus be deprived of the ordinary use of his property, but, rather, that the railway company in such cases assumes the risk of the accident as a consequence of its neglect to properly discharge a statutory duty; that it undertakes at its peril to see that no harm comes to stock from running its trains under such conditions."

In St. Louis S. W. Ry. Co. of Tex. v. Blackwell, 40 S. W. 860, after citing Clark v. Dyer, 81 Tex. 340, 16 S. W. 1063, in support of the rule, it is said:

"The statute [article 6599] authorizes the owner, in case the railway company fails to construct and keep in repair needed cattle guards, to construct them and keep them in repair at the expense of the company; but the company cannot shield itself from liability upon the ground that the owner did not avail himself of the privilege of doing the work himself. There are obvious reasons for this."

One of the obvious reasons is stated to be that:

"The owner in lawful possession of his land is entitled to use it, in any lawful manner he may desire, for any purpose for which it may be adapted. The law does not require that the owner shall preserve and guard his premises from the effects of injuries caused by the wrongful acts of another before he is justified in the use thereof. A different rule would virtually deprive the owner of the beneficial rights incident to the enjoyment of his estate."

For the reasons stated, we conclude that the evidence did not raise the issue of contributory negligence.

The judgment is affirmed.